THE KEY AGENCY, A CORPORATION, PLAINTIFF-APPELLANT, v. CONTINENTAL CASUALTY COMPANY, A CORPORATION, DEFENDANT-RESPONDENT.

Argued October 13, 1959—Decided November 9, 1959.

*Mr. Daniel G. Gallop* argued the cause for the plaintiff-appellant.

*Mr. Louis Auerbacher, Jr.,* argued the cause for the defendant-respondent.

The opinion of the court was delivered by
BURLING, J.  Plaintiff instituted this action in the Superior Court, Chancery Division, to compel the defendant to hold in trust for plaintiff money received or to be received by the defendant as an assignee of General Builders Incorporated (hereinafter called the contractor) from the Board of Education of Franklin Township, New Jersey, and the Board of Education of Kinnelon Township, New Jersey.  Plaintiff

moved for summary judgment and defendant filed a cross-motion for judgment on the pleadings, each party submitting affidavits to support its motion. The trial court granted defendant's motion, 55 *N. J. Super.* 58, and thereafter plaintiff prosecuted an appeal to the Superior Court, Appellate Division. While the cause was pending there and prior to argument, we certified it on our own motion.

Plaintiff provided the contractor with workmen's compensation and public liability insurance policies in connection with the performance of three contracts, two between the contractor and the Board of Education of Franklin Township and one between the contractor and the Board of Education of Kinnelon Township. The premiums on these policies, variously disclosed in the record to be between $2,847.15 and $2,848.85, remain unpaid. The contractor defaulted in performance of the contracts and in payment of those having unpaid claims because of the work. The defendant, surety on the payment and performance bonds obtained by the contractor in connection with the three contracts pursuant to *N. J. S.* 2A:44–143 *et seq.*, secured an assignment of funds in the hands of the school boards due or to become due to the contractor on the contracts. To date, the defendant has received $28,258.90 from the Kinnelon school board as a result of these assignments and has paid out $60,207 on its bond to persons having claims because of the Kinnelon school board contract. Although the record is not lucid as to whether the $60,207 was paid for existing unpaid claims or for those necessarily paid in the completion of the contract assumed by the bonding company, it is not necessary for this to be determined, by virtue of the manner of the disposition of this case. Defendant has received nothing from the Franklin Township school board and has paid out $112,850 on its bond on claims arising from the work on the two Franklin Township schools. Likewise in this instance, although it is not clear from the record whether the $112,850 was paid for existing unpaid claims or for those necessarily paid in the completion of

the contract assumed by the bonding company, it is not necessary for this to be determined, by virtue of the manner of the disposition of this case.

Plaintiff's theory of recovery is that money paid to the contractor on account of a contract with a public body, as defined in the act, is a trust fund for the payment of all claims for labor, materials and other charges incurred in connection with the performance of the contract, relying on *N. J. S.* 2*A*:44–147 (apparently erroneously designated as such in the *Revision,* it should be 2*A*:44–148). Plaintiff argues that "other charges" as used in the statute includes within the protection of the trust the type of claim it is making and that since defendant is an assignee of the contractor with notice of the nature of the funds received from the school board, the money which defendant has or will have because of the assignment from the contractor is subject to the trust. Plaintiff also contends that all other persons having claims arising in connection with the performance of the contract were paid because of the defendant's obligation to them arising under the payment bond and that the trust fund remains as yet untouched and available for plaintiff. Defendant attacks this argument on several grounds, but we find it necessary to consider only one of them, namely, whether the type of claim asserted in this matter is included within the purview of the statute.

*N. J. S.* 2*A*:44–147(148), hereinafter referred to as the Trust Fund Act, provides:

"All money paid by the state of New Jersey or by any agency, commission or department thereof, or by any county, municipality or school district in the state, to any person pursuant to the provisions of any contract for any public improvement made between any such person and the state or any agency, commission or department thereof, or any county, municipality or school district in the state, shall constitute a trust fund in the hands of such person as such contractor, until *all claims for labor, materials and other charges* incurred in connection with the performance of such contract shall have been fully paid." (Emphasis supplied)

*N. J. S.* 2*A*:102–12, an act approved the same day as the Trust Fund Act and obviously intended to implement it, provides:

"All moneys paid by the state, or an agency, commission or department thereof, or by a county, municipality or school district, or by a public authority, to any person pursuant to the provisions of a contract for the making of any public improvement, shall constitute a trust fund in the hands of such contractor. Any such person who shall use any of the money so received for a purpose other than the payment of claims *for labor or materials and such other proper charges* as are incurred in connection with the contract, is guilty of a misdemeanor." (Emphasis supplied)

Plaintiff argues that the Legislature, by adding the words "other charges" after "labor" and "materials" in the Trust Fund Act, intended to include all persons with claims incurred in connection with the performance of the contract within the protection of that act. We find that this is not the effect of the quoted words and that the Legislature's intention including "other charges" in the Trust Fund Act was only to give that act the same scope as *N. J. S.* 2*A*:44–143, hereinafter referred to as the Bond Act.

In attempting to discover legislative intention in any law, it is proper to consider other laws which pertain to a similar subject matter and especially those which were enacted during the same legislative session as the law in question. *Hudson v. Brooks,* 62 *Ariz.* 505, 158 *P.* 2*d* 661 (*Sup. Ct.* 1945); *Davis v. Browder,* 231 *Ala.* 332, 165 *So.* 89 (*Sup. Ct.* 1935); 2 *Sutherland, Statutory Construction,* § 5002, *p.* 484 (3*d ed.* 1943). It is also appropriate to consider the history of a statute prior to its enactment. *Id.* at § 5003.

Such a study indicates that the phrase "other charges" was included in the Trust Fund Act to give that act the same scope as *N. J. S.* 2*A*:44–143. *N. J. S.* 2*A*:44–143, the Bond Act, originated as *L.* 1918, *c.* 75. In its original version, it required a bond to guarantee payment only of claims arising because of "labor performed or material furnished" in connection with a public improvement. On

February 1, 1932, however, a bill was introduced in the New Jersey Senate to extend the Bond Act to include "labor performed or materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about" the public improvement. In part at least, the motivation for this amendment would appear to alter the result of a series of cases narrowly construing the Bond Act's original language. See, *e. g., West Jersey & Seashore R. Co. v. County of Cape May*, 105 *N. J. Eq.* 457 (*Ch.* 1929); *Stein v. J. T. Stout Co.*, 9 *N. J. Misc.* 685 (*Sup. Ct.* 1931). On February 8, 1932, seven days after the above amendment to the Bond Act was offered, the Trust Fund bill was introduced in the Assembly. The original Trust Fund bill included "all the claims for labor and/or material which shall have been incurred in the performance" of the public improvement. Later, on February 29, 1932, the amendment to the Bond Act was reported back from the Senate Committee to which it had been referred. On the same date, the Trust Fund Act was amended in the Assembly on the motion of its introducer to extend its coverage to "all claims for labor and/or material *and such other proper charges* which shall have been incurred" in connection with such contract. (Emphasis supplied) Senate amendments prior to passage made minor verbal changes in the Trust Fund Act, leaving the pertinent language to read "all claims for labor, materials and other charges incurred in connection with the performance of such contract * * *."

It has since been said that the Trust Fund Act and the Bond Act along with the Municipal Mechanics Lien Law, *N. J. S.* 2A:44–125, *et seq.*, are in *pari materia* and hence must be construed together. *Wilson v. Robert A. Stretch, Inc.*, 44 *N. J. Super.* 52 (*Ch. Div.* 1957); *Fidelity & Deposit Co. of Maryland v. McClintic-Marshall Corp.*, 115 *N. J. Eq.* 470 (*Ch.* 1934) affirmed 117 *N. J. Eq.* 440 (*E. & A.* 1935). This obvious relationship most likely suggested to the Legislature that the Trust Fund Act should include the same claims as the Bond Act. This, then, would

appear to be the reason why the "other charges" phrase was inserted into the Trust Fund Act at the time it was. Nor is this likelihood in any way diminished because the exact language of the Bond Act amendment was not inserted into the Trust Fund Act. At first glance, it would appear that, because the Bond Act amendment used specific terms whereas the Trust Fund Act was expanded by a general phrase, it was intended to give the Trust Fund Act a broader meaning than the Bond Act, rather than, as suggested above, to give the two acts an identical coverage. Yet when the chronological sequence of the passage of the Trust Fund Act and the Bond Act amendment is recalled, a reason for this difference appears. When the Trust Fund Act was extended by amendment to include "such other proper charges," the Bond Act amendment had just been reported back from the Senate Committee. That the Bond Act amendment might be altered, either on the floor of the Senate or in its passage through the Assembly, was possible. Instead of including the exact language of the Bond Act amendment, only to have to recall the Trust Fund Act for additional changes every time the Bond Act amendment was changed, economy of legislative motion suggested that a general phrase be inserted to indicate an intention to make the Trust Fund Act's coverage the same as that of the Bond Act amendment. It is true that the final Senate amendments to the Trust Fund Act were made after final passage of the Bond Act, but the Legislature did not include the exact language of the latter act in the Trust Fund Act because the general reference was clear enough.

This analysis of the changes made in the Trust Fund Act prior to its passage by the Legislature, viewed in the light of the chronological sequence of events leading to the passage of the Bond Act amendment, indicates that the Legislature intended the Trust Fund Act to cover the same claimants mentioned in the Bond Act. In addition, the apparent reason for the passage of the Trust Fund Act suggests the same conclusion.

The first mechanics' lien law was enacted in the United States by Maryland, *L. 1791, c. 45 ¶ X.* "This * * * law was created expressly 'for the encouragement of master builders to undertake the building' of houses in the projected city of Washington * * *." *McNab & Harlin Mfg. Co. v. Paterson Building Co.,* 71 *N. J. Eq.* 133, 138 (*Ch.* 1906) affirmed 72 *N. J. Eq.* 929 (*E. & A.* 1907). The first New Jersey mechanics' lien law also was a special law, applicable to a limited territory. *L. 1820, p. 124.* Subsequent amendments added to the places where the law was effective and finally, in 1853, a mechanics' lien law was enacted for the entire State. *L. 1853, p. 437.* An early case decided that this general mechanics' lien statute and its subsequent versions allowed workmen to obtain a lien on the money due to a contractor from a municipality for work performed on public works and improvements, although it was indicated by way of *dictum* that public policy prohibited the lien from attaching to the public improvement itself. *Frank v. Board of Chosen Freeholders of County of Hudson,* 39 *N. J. L.* 347 (*Sup. Ct.* 1877). See *Shannon v. Mayor and Common Council of City of Hoboken,* 37 *N. J. Eq.* 123, 126–127 (*Ch.* 1883) affirmed 37 *N. J. Eq.* 318 (*E. & A.* 1883); *Arzonico v. Board of Education of the Town of West New York,* 75 *N. J. L.* 21, 22 (*Sup. Ct.* 1907). By *L.* 1891, *c.* 225, and *L.* 1892, *c.* 232, the Legislature enacted the antecedents of the present Municipal Mechanics' Lien Law, giving laborers and materialmen who followed the procedure set out in the statute a lien on the contract funds in the hands of the public agency. At first it was held that this law did not vitiate the right of laborers and materialmen to proceed against the fund under the general mechanics' lien law. *Arzonico v. Board of Education of the Town of West New York, supra.* In 1909, however, the Legislature indicated its intention that the act of 1892 should be the sole means for acquiring a mechanics' lien because of any public improvement. *L.* 1909, *c.* 171, § 7; *Board of Education of Borough of Riverton v. Tait,* 81 *N. J. Eq.* 161

(*E. & A.* 1913). But see *Cellized Floors, Inc. v. Glens Falls Indemnity Co.,* 9 *N. J. Misc.* 1111 (*Sup. Cl.* 1931). The present Municipal Mechanics' Lien Law was enacted in 1918, *L.* 1918, *c.* 280, and amended in 1933, *L.* 1933, *c.* 227, to expressly include, besides labor and materials, the furnishing of oil, gasoline or lubricants and vehicle use.

The burden on the owner, municipal or private, in dealing with mechanics' lien claimants and the difficulties of laborers and materialmen in collecting their claims despite the various mechanics' lien laws indicated a need for a requirement that the contractor furnish a payment bond guaranteeing the satisfaction of the claims of laborers and materialmen. See *Note, "Mechanics' Liens and Surety Bonds in the Building Trades,"* 68 *Yale L. J.* 138, 162 (1958). A bill to require this was introduced before the Legislature in 1912, but not adopted. 36 *N. J. L. J.* 38–40 (1913). The Bond Act, however, was enacted in 1918, *L.* 1918, *c.* 75. It applied to contracts entered into for public works and improvements, and required a payment bond to secure the claims of laborers and materialmen, in effect transferring the prime importance formerly accorded to the mechanics' lien to the payment bond. See *Note,* 68 *Yale L. J.* 138, 161–162 (1958). In most situations in which the payment bond was called upon to satisfy claims, the contractor had become insolvent. But because the surety was liable on the bond it was in his interest that claimants who could claim on the payment bond be paid from the contract price, even where they had not filed liens. The contractors, however, were accustomed to receiving earned installments on the contract price as the work progressed. Not infrequently the contractors would pay from these earned installments creditors whose claims arose because of other transactions not connected with the performance of the contract. See *Note,* 68 *Yale L. J.* 138, 156 (1958). Once this had happened, the surety could not complain of the use made of the funds by the contractor. In *Grover v. Board of Education of Franklin Tp.,* 102 *N. J. Eq.* 415 (*Ch.* 1928) affirmed 104 *N. J. Eq.* 197

(*E. & A.* 1929), the contractor paid a portion of an earned installment to a materialman without any direction as to the application of the payment. The sum was more than sufficient to satisfy the materialman's claim which arose from the contract on which the installment was paid. The materialman chose, however, to apply the payment to a prior debt owed to him by the contractor, and proceeded to file a lien claim on the money in the hands of the school board, which claim the surety asserted was satisfied. The court allowed the materialman's lien.

Thus it was made clear that to protect the position of the payment bond surety, it was necessary to require in some way that money paid to the contractor on account of public contracts be applied to the reduction of debts for labor and materials and other items guaranteed by the payment bond. This was the effect of the Trust Fund Act and its companion act, *N. J. S.* 2A:102–12 which imposes a criminal penalty for violations of the Trust Fund Act. Applying the rule of construction that ambiguous statutory phrases are to be interpreted in light of the occasion and necessity of the law, the mischief felt and the remedy in view, *Leilner v. Citizens Casualty Co.*, 135 *N. J. L.* 608, 612 (*E. & A.* 1947); *Grogan v. DeSapio*, 11 *N. J.* 308, 323 (1953), it appears that the Trust Fund Act was intended primarily to benefit the surety, and that the words "labor, materials and other charges" in the Trust Fund Act refer to "labor * * * or materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery" in the Bond Act. See *Stulz-Sickles Co. v. Fredburn Construction Corp.*, 114 *N. J. Eq.* 475, 478–479 (*Ch.* 1933).

That the Bond Act applies only to contracts for public works and improvements and that the Trust Fund Act is similarly limited tend to support this conclusion, since if it were the intention of the Legislature by the Trust Fund Act to enunciate a rule of public policy that the contract funds were first to be used to satisfy all claims arising from the performance of the contract, it is likely that the Trust

Fund Act would be made applicable to all construction contracts, public and private. In addition, it may be noted that other states with statutes expressing the philosophy of the Trust Fund Act, many of which extend beyond a public improvement, expressly confine the protection of such acts to lienable claims, indicating an intention to benefit primarily the owner or the surety on a payment bond. *Ark. Stat. Ann.* § 51–601; *Neb. Rev. Stat.* § 52–119; *Wash. Rev. Code* § 9.54.080. A similar provision to the Trust Fund Act was included in the Model Mechanics' Lien Act, see *Fla. Stat. Ann.* § 84.07(3), apparently for the same reason. See *Maull v. Stokes*, 31 *Del. Ch.* 188, 68 *A.* 2d 200 (*Ch.* 1949), where the court said:

"[O]ne of the primary purposes of paragraph 3652 [providing that all moneys received by a contractor in connection with a contract for the erection of any building are declared to be trust funds in his hands] is for the protection of the owner." 68 *A.* 2d at *page* 202.

██ Thus, it seems that the protection of the Trust Fund Act extends only to persons who could go against the contractor's surety on the payment bond. This conclusion would seem to be impliedly supported by cases in our courts which have construed the Trust Fund Act. *Stulz-Sickles Co. v. Fredburn Construction Corp.*, 114 *N. J. Eq.* 475 (*Ch.* 1933); *Fidelity & Deposit Co. of Maryland v. McClintic-Marshall Corp.*, 115 *N. J. Eq.* 470 (*Ch.* 1934) affirmed 117 *N. J. Eq.* 440 (*E. & A.* 1935); *National Surety Corp. v. Barth*, 11 *N. J.* 506 (1953). But see, *Wilson v. Robert A. Stretch, Inc.*, 44 *N. J. Super.* 52, 56 (*Ch. Div.* 1957) (*dictum*). And, while the point has never been expressly decided in this State, it would clearly appear that plaintiff in providing workmen's compensation and public liability insurance to the general contractor did not perform labor or furnish "materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about the construction, erection, alteration or repair of .* * * buildings, works

or improvements." *N. J. S.* 2A:44–143. In the absence of an express provision to the contrary in the bond or building contract, it is generally held that a surety is not liable on a payment bond to satisfy claims for public liability or workmen's compensation policy premiums arising in connection with the performance of the contract. 43 *Am. Jur., Public Works and Contracts,* § 189, *p.* 930; 63 *C. J. S. Municipal Corporations* § 1178(*b*), *p.* 874; *Annotations,* 102 *A. L. R.* 135, 164 *A. L. R.* 1468, 129 *A. L. R.* 1087; Note, 68 *Yale L. J.* 138, 152 (1958).

Plaintiff's claim is not within the protection afforded by the Trust Fund Act, *N. J. S.* 2A:44–147(148). For this reason, the judgment of the Superior Court, Chancery Division, is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.