74 N.J. Super. 217 (1962)
181 A.2d 35
IN THE MATTER OF THE ESTATE OF NORMAN HENRY GARDINIER, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1962.
Decided May 11, 1962.
*219 Before Judges GOLDMANN, FREUND and FOLEY.
Mr. Donald L. Berlin argued the cause for appellant (Messrs. Stevenson & Willette, attorneys; Mr. Berlin, of counsel).
No brief was filed or appearance made by respondent.
The opinion of the court was delivered by FREUND, J.A.D.
This appeal is by Clyde Gardinier, son and sole heir of the decedent Norman Henry Gardinier, from an order of the Essex County Court, Probate Division, *220 denying his application for an order setting aside a judgment of the Essex County Surrogate's Court granting administration upon the estate of his father to Philip Lindeman II.
The underlying facts may briefly be stated as follows. On September 10, 1957 Norman Henry Gardinier, while driving an automobile in Belleville, N.J., was involved in an accident with another automobile being operated by Nicholas Torsiello, a resident of New Jersey. On that date Gardinier resided at 67 Rossmore Place, Belleville, and was insured for liability by the St. Paul Fire and Marine Insurance Company, a Minnesota corporation authorized to do business in New Jersey.
On November 18, 1957 Michael Cafone and Lucille, his wife, purchased from Gardinier his property on Rossmore Place. Gardinier, soon after the conveyance of his property, moved to reside with his son, Clyde, at Mount Pleasant, Pleasantville, N.Y. These facts were corroborated by affidavits of Michael Cafone and Clyde Gardinier. Norman Henry Gardinier continued to reside at Mount Pleasant until his death on November 21, 1958. The decedent had no assets in New Jersey at the time he died.
On July 29, 1959 Torsiello filed a complaint against Norman Henry Gardinier in the Superior Court, Law Division, for personal injuries allegedly resulting from the 1957 automobile accident. The sheriff of Essex County was unable to effect service of the complaint since the return made by the deputy disclosed that the defendant had died. An attempt was then made to effect service of the summons and complaint on the decedent's insuror, but it refused because it had no authority to accept service. Torsiello offered to stipulate that the ad damnum clause of his complaint would be reduced to coincide with the limits of the policy if service of process would be accepted by the carrier, but this offer was rejected.
On September 14, 1960 Torsiello filed a complaint for the administration of Gardinier's estate with the Essex *221 County Surrogate, alleging that the decedent was domiciled at the Belleville address at the time of his death. On October 13, 1960 the surrogate granted letters of administration to Philip Lindeman II. This judgment recited, inter alia, that Torsiello was a creditor of Gardinier, "late of the County of Essex and State of New Jersey * * * [who] died possessed of goods, chattels, rights and credits" of the value of $1,000, and that all other parties entitled to administration "have been duly noticed and have not appeared." On October 26, 1960 Torsiello filed an amended complaint in the personal injury action naming Lindeman, the administrator, a party defendant. The following day this complaint was served.
Upon motion by Clyde Gardinier on behalf of his father's estate, an order was entered on March 20, 1961 to show cause why the judgment granting letters of administration to Lindeman should not be set aside. The affidavits of Cafone and Gardinier were received and considered at the argument on the return of the order to show cause. In addition, there was received an affidavit of Lindeman who stated that "to my knowledge there are no assets of the said estate in the State of New Jersey." An affidavit of Torsiello's attorney was also received at the oral argument. It stated:
"Upon information and belief, I was further informed that said NORMAN HENRY GARDENIER [sic] was physically and mentally ill by reason of the frailties of human nature due to his age. As a result thereof he was taken to Mount Pleasant, Pleasantville, New York to stay with his relatives.
The said NORMAN HENRY GARDENIER [sic] at that time and place could not manifest any intention to change his domicile from New Jersey by reason of his physical and mental condition which shortly thereafter, some 7 months later, terminated his death.

* * * * * * * *
At the time he left the Town of Belleville, Essex County, New Jersey, he was neither physically or mentally well and could not and did not manifest any intention to change his domicile."
The affidavit further stated that administration was being sought "so that service of the summons and complaint [in *222 the personal injury action] could be effected upon decedent's representatives."
The trial judge denied the application to set aside the surrogate's judgment. In so deciding he relied upon N.J.S. 3A:6-10, which provides in pertinent part:
"If an executor or administrator of a nonresident decedent fails to apply in this state for letters testamentary or of administration within 60 days next after the death of the decedent and there is, real property, choses in action or other personal property of the decedent within this state, or the evidence of choses in action in the hands of a resident of this state, the surrogate's court of a county wherein any such real property, choses in action or evidences thereof or other personal property, is situate, or the superior court, may, in an action by any person resident or non-resident, alleging himself to have a debt or legal claim against the decedent which by the law of this state survives against his representatives, issue letters of administration, with the will annexed or otherwise as the case may require, to some fit person to be designated by the court." (Emphasis added)
The trial judge found that the jurisdictional requirements of the statute were satisfied for the reason that the tort claim of Torsiello, a creditor, was an "evidence of choses in actions in the hands of a resident of this State." He ruled, apparently as an alternative reason for affirming the Surrogate's judgment, that Gardinier's insurance policy was personal property, on the theory it had its situs in this State at the time of the accident.
Our examination of the issues convinces us that the present appeal is controlled principally by In re Roche, 16 N.J. 579 (1954), which interpreted N.J.S. 3A:6-10 under somewhat similar circumstances. The facts of In re Roche disclose that Roche, who was driving an automobile in New Jersey, and Keefe, his passenger, both suffered fatal injuries as the result of a collision with a truck. Both men were residents of New York. Roche's automobile liability insurance policy was issued in New York by a foreign corporate insuror, also authorized to do business in New Jersey, both at the time of the accident and during the subsequent litigation. The widows were appointed as *223 administratrices of their respective husbands' estates in New York. Mrs. Keefe was then appointed administratrix ad prosequendum in New Jersey to prosecute an action here against the Roche estate. She then claimed that Roche's liability insurance policy was an asset of his estate in New Jersey within the meaning of N.J.S. 3A:6-10. The Superior Court, Chancery Division, refused, however, to appoint an ancillary administrator of the Roche estate to administer the insurance policy in the interest of creditors of the Roche estate. The trial judge held that the policy of insurance was an asset of that estate which was located in the State of New York, rather than in the State of New Jersey. 30 N.J. Super. 572 (Ch. Div. 1954). The obvious purpose of that application was, as here, to secure service of process in New Jersey against the decedent's estate in a personal injury action.
On appeal our Supreme Court affirmed the Chancery Division judgment, holding that:
"* * * there was no `chose in action' or `personal property' of the deceased Roche within New Jersey, nor `the evidence of choses in action in the hands of a resident' of New Jersey within the intendment of the statute, considering its manifest reason and spirit.

* * * * * * * *
It is a jurisdictional sine qua non of the statutory ancillary administrative function that there be a chose in action or other property of the deceased nonresident `within' New Jersey, or `the evidence' of a chose in action `in the hands of a resident' of New Jersey.
Here, in all seeming the situs of the insurance policy is the domicil of the nonresident decedent at the time of his death. Personal property ordinarily has its situs at the domicil of the owner. Certainly, the situs of this intangible is not in New Jersey; and the insurer is plainly not a `resident' of New Jersey in the statutory sense." 16 N.J., at pp. 584-586.
Preliminarily, we observe that if there can be administration of Gardinier's estate in New Jersey, Torsiello, a New Jersey resident, was a proper party to institute the administration proceedings. N.J.S. 3A:6-10 permits a resident who alleges he has a debt or legal claim against a *224 decedent, "which by the law of this state survives against his representatives," to request that letters of administration be issued "to some fit person to be designated by the court." N.J.S. 2A:15-4 provides that if a testator or intestate, during his lifetime, shall have committed any torts in the nature of personal injury or property damage, the person injured thereby may maintain the same action and recover damages against the executors or administrators of the testator or intestate as he might have against the testator or intestate himself. This statute eliminates the now discredited common law rule against post mortem suits. Long v. Landy, 35 N.J. 44, 53 (1961). Accordingly, Torsiello, as a tort claimant, was a qualified applicant for administration under the provisions of N.J.S. 3A:6-10.
The primary consideration in applying N.J.S. 3A:6-10, as interpreted by Roche, to the facts of this appeal is whether the nonresident, on the date of his death, had any property in this State within the meaning of that statute. The statute refers to property in this context as of three classes: (1) real property; (2) "choses in action or other personal property of the decedent within this state"; and (3) "the evidence of choses in action in the hands of a resident of this state." As noted, the trial judge found these last two classes present under the facts of this appeal. Real property, of course, has no role in this action. Gardinier had sold his Belleville property to the Cafones more than one year before his death.
Considering the second classification of property, the trial judge held that the situs of the insurance policy at the time of the accident was the crucial factor in determining whether that policy was a chose in action of the decedent located within New Jersey. The Roche decision impels us to hold otherwise. The decedent, like the decedent in Roche, was a resident and domiciliary of New York at the time of his demise. Relying on the long-settled principle that personal property, viz., the insurance contract, has its situs at the domicile of the owner, the court in *225 Roche held that Roche's insurance policy was not located in New Jersey, but in New York. 16 N.J., at p. 586. It is our view that the Roche decision is not rendered inapplicable simply because Gardinier was domiciled in New Jersey when the accident occurred. The important date for determining the situs of the chose in action is therefore the date of death.
Moreover, we are particularly influenced in this regard by the provisions of N.J.S.A. 39:7-2.1. That statute permits service of process in any proceeding resulting from an automobile accident in New Jersey to be made on the Director of the Division of Motor Vehicles if a resident of New Jersey involved in an accident thereafter ceases to be a resident of this State and service of process upon him within New Jersey cannot be made by reason of his nonresidence. The statute contains no provision for service of process on the executors or administrators of the members of the class encompassed therein. While N.J.S.A. 39:7-2, which provides for service on a nonresident who shall drive a motor vehicle upon any public highway in this State (by constituting the Director of the Division of Motor Vehicles in the Department of Law and Public Safety as his agent for that purpose) was amended subsequent to the Roche decision (L. 1958, c. 59, § 1) to permit such service on the executor or administrator of any such person nonresident at the time of the accident, no similar provision is found in N.J.S.A. 39:7-2.1. Had the Legislature intended thus to expand the scope of in personam jurisdiction, it could have so provided. It is elementary that the intent of the Legislature is to be gleaned from the language of its statutes. We cannot arbitrarily expand the scope of any statute beyond the plainly expressed legislative intent. Pacific Discount Co. v. Powell, 70 N.J. Super. 156, 159 (App. Div. 1961).
Consequently, although Gardinier was subject to service of process during his lifetime, even after he moved to New York, his death eliminated Torsiello's right to have *226 Gardinier's estate subjected to in personam jurisdiction in New Jersey under the provisions of the Motor Vehicle Law. Since neither Gardinier nor his estate could be made a party to the personal injury action and since his insurance policy could not be made the basis of an award of administration to Lindeman, the insurance company is not obliged to defend its former assured's estate or obligated to pay any judgment in an action brought against the estate in New Jersey. In re Roche, supra, therefore, is applicable to the facts here present.
The third classification of property under N.J.S. 3A:6-10 is "evidence of choses in action in the hands of a resident of this state." The trial judge held that Torsiello's tort claim against the decedent satisfied this definition. While this argument was not specifically discussed in Roche  the tort claimant in that case was a nonresident at the time of the accident and the institution of proceedings for ancillary administration and therefore necessarily excluded by the terms of N.J.S. 3A:6-10 from holding "evidence of choses in action"  we believe a fair reading of the Roche decision and the apparent intent of the statute compels an approach contrary to the trial court's rationale.
The Roche decision specifically declared that the provision for ancillary administration in New Jersey under N.J.S. 3A:6-10 is "obviously a measure designed to protect and subject to administration tangible and intangible property of the deceased then within New Jersey." 16 N.J., at p. 584. (Emphasis added.) The court also pointed out that "[p]ersonal property within the State belonging to the estate of the decedent is the factum of jurisdiction to provide ancillary administration" within the meaning of N.J.S. 3A:6-10. 16 N.J., at p. 586. (Emphasis added.) Finally, that "ancillary administration is a mode of procedure designed only to protect property of the deceased nonresident situate within the jurisdiction, at the outset for the benefit of resident creditors * * * but later, * * * for the protection also of nonresident creditors." *227 Id., at p. 587. (Emphasis added.) All these references convince us that the Supreme Court interprets N.J.S. 3A:6-10 and, by implication, "evidence of choses in action in the hands of a resident of this state" as referring only to property owned by the decedent at the time of his death. With this interpretation we are, of course, in accord.
So viewed, the statute under consideration actually means "evidence of choses in action [of the decedent] in the hands of a resident." Any other interpretation would be a strained one since it would permit ancillary administration in New Jersey of a decedent's estate when in fact the nonresident decedent left no property of his own in this State available for administration. We do not believe this was the purpose of the Legislature in enacting N.J.S. 3A:6-10.
Basically, then, this provision of "evidence of choses in action" refers to the same type of property denominated under the second classification of property contained in N.J.S. 3A:6-10. In this regard we are not unmindful of our reference earlier in this opinion that "we cannot arbitrarily expand the scope of any statute." However, since the actual legislative intent in this particular classification of property is somewhat beclouded by the brevity of the language chosen, we will not permit ourselves to be blindly detoured from the true and obvious legislative purpose by any inadvertence on the part of the draftsman of the bill. Graham v. Asbury Park, 69 N.J. Super. 256, 263 (App. Div. 1961), affirmed 37 N.J. 166 (1962).
These conclusions are reinforced by an examination of N.J.S. 3A:6-9, which provides that letters of administration may be granted for the estate of a nonresident intestate, either to his nonresident administrator or to anyone entitled to administration if the intestate was a resident at his death. Of the three classes of property subject to being administered under this statute, two classes are exactly the same as those found in N.J.S. 3A:6-10: (1) real property within New Jersey; (2) choses in action or other personal property in this State. The third class *228 is explicitly defined as "evidence of his [the decedent's] choses in action * * * in the hands of any resident of this state." (Emphasis added.) This clause supplies the omitted language in N.J.S. 3A:6-10. N.J.S. 3A:6-9 has already been judicially construed as relating to "assets of decedent within the state." In re Unglaub, 119 N.J. Eq. 287, 289 (Prerog. 1936).
Both N.J.S. 3A:6-9 and 10 were originally enacted at the same time (L. 1898, c. 234, § 29, p. 725); both were incorporated in juxtaposition into the Revised Statutes of 1937 (R.S. 3:7-10 and 11); both are part of Title 3A ("Administration of Estates"), Subtitle 3, c. 6, art. 1 ("Executors, Administrators and Trustees"). Clearly, they are in pari materia. Therefore, it is proper to consider the more explicit language of N.J.S. 3A:6-9 dealing with the third classification of property as a device for determining legislative intention. Key Agency v. Continental Casualty Co., 31 N.J. 98, 103 (1959); 2 Sutherland, Statutory Construction (3d ed. 1943), § 5001, pp. 481-2.
On the basis of these various approaches, we are convinced that the third classification of property only refers to choses in action that belonged to Gardinier. Accordingly, the trial court erred by holding that Torsiello's tort claim satisfied this jurisdictional requirement.
The remaining points may be disposed of summarily. Appellant's brief alleges that Gardinier's policy was cancelled before the time of his death, but the record does not support this conclusion. The allegation that Gardinier's physical and mental illness prevented him from manifesting an intent to change his domicile is contained in an affidavit by Torsiello's attorney "upon information and belief." The statement is not corroborated and is based upon hearsay. R.R. 4:58-6. Consequently, there could be no administration under N.J.S. 3A:6-3 since the record is devoid of any proof that Gardinier resided in Essex County at the time of his death. The proofs clearly disclose that he was a nonresident at that time. It is a jurisdictional prerequisite *229 for the issuance of such letters under N.J.S. 3A:6-3 that the decedent died a resident within the territorial confines of the court. Here the court lacked this basis of jurisdiction. In re Fisher, 13 N.J. Super. 48, 55 (App. Div. 1951); In re Gilbert, 18 N.J. Misc. 540, 15 A.2d 111 (Sur. Ct. 1940); 6 N.J. Practice (Clapp, Wills and Administration), § 695, p. 260 (3d ed. 1962). Cf. Trust Co. of N.J. v. Spalding, 125 N.J. Eq. 66, 68-9 (Ch. 1939).
The judgment is reversed and remanded with instructions to vacate the grant of ancillary letters to Lindeman, with costs.