UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 96-50891
_____


Gary Reed Walp,

                              Plaintiff-Appellant,

                    versus

      Wayne Scott, Director, Texas Department of Criminal Justice,
Institutional Division; Allen B. Polunsky; Ellen J. Halbert; Carole
S. Young; Joshua W. Allen; R.H. Duncan; John R. Ward; John David
Franz; Nancy Patton; Carol S. Vance,

                              Defendants-Appellees.


_____

       Appeal from the United States District Court for the
                    Western District of Texas
_____

                        June 6, 1997

Before WISDOM, BENAVIDES, and STEWART, Circuit Judges.

BENAVIDES, Circuit Judge:

      This case involves an appeal from the district court's denial

of *in forma pauperis* ("IFP") status and the subsequent dismissal of

a prisoner's claim brought pursuant to 42 U.S.C. § 1983.  The

district court interpreted the recently enacted Prisoner Litigation

Reform Act of 1996 ("PLRA" or "the Act")[1] to bar the filing of a second civil rights complaint because the appellant had not fully paid the costs associated with filing a previous claim. Because the district court's decision was not authorized by the language of the PLRA and was inconsistent with the statutory scheme, we vacate the judgment of the district court.

## I.  Background

On May 28, 1996, Gary Reed Walp filed a complaint in federal district court under 42 U.S.C. § 1983 alleging that several of the prison guards where he is confined violated his constitutional rights. In addition, Walp filed a motion to proceed IFP and documents regarding his financial status necessary to comply with the PLRA. *See* 28 U.S.C. § 1915(a). Walp was assessed an initial filing fee of 14¢ and granted permission to proceed IFP upon the court's receipt of the requisite payment. *See id.* § 1915(b).

On August 30, 1996, Walp filed the subject § 1983 claim and motion to proceed IFP.[2] The district court *sua sponte* entered an

---

[1]  The federal *in forma pauperis* statute is codified at 28 U.S.C. § 1915. The PLRA significantly amended that statute. *See* Pub. L. No. 104-134, 110 Stat. 1321 (1996).

[2]  Walp's motion contained sufficient documentation to satisfy the requirements of § 1915(a) of the Act. This documentation included Walp's declaration, under penalty of perjury, that he had no assets or financial resources with which to pay the requisite filing fees. In addition, Walp provided certification from the Texas Department of Criminal Justice that both his current account balance and his average account balance for the previous six months were $0.00.

order denying the motion to proceed IFP and dismissing the complaint. The court held that unless Walp's previously filed complaint was dismissed voluntarily or for failure to prosecute, Walp could not file any other complaints until the full filing fee was paid in his previously filed case. Because Walp had paid only 14¢ toward the $120 filing fee in the previously filed case, the court denied IFP status and dismissed the complaint.

Walp timely filed his notice of appeal. On February 26, 1997, this court granted Walp's motion to proceed IFP on appeal. This appeal followed.

## II. Discussion

When Congress originally enacted the federal *in forma pauperis* statute, it "intended to guarantee that no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, in any court of the United States, solely because ... poverty makes it impossible ... to pay or secure the costs of litigation." *Denton v. Hernandez*, 504 U.S. 25, 31, 112 S. Ct. 1728, 118 L.Ed.2d 340 (1992) (internal quotations and citations omitted). At the same time that it sought to increase indigent persons' access to the courts, however, "Congress recognized that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* (internal quotations and citations omitted). Therefore,

3

Congress included a statutory provision that allowed a court to dismiss a pauper's case if the court was satisfied that the complaint was frivolous or malicious. *Id.; see also* 28 U.S.C. § 1915(d) (1994), *amended by* 28 U.S.C. § 1915(e) (Supp. 1997).

In 1996, in response to an "alarming explosion in the number of frivolous lawsuits filed by State and Federal prisoners,"[3] Congress amended the federal IFP statute by enacting the PLRA. The PLRA includes a number of provisions intended "to discourage frivolous and abusive prison lawsuits."[4] First, the Act removes some of a federal court's discretion by requiring the court to dismiss a case if it determines that the action or appeal is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). Second, the PLRA requires inmates who file lawsuits to pay eventually the full amount of their court fees and other costs and establishes a garnishment procedure to ensure the collection of such debts. *See id.* §§ 1915(a), (b), & (c). Third, the Act generally revokes a prisoner's privilege to proceed IFP in any civil action if the prisoner has, on three prior occasions during detention, had an action or appeal dismissed as frivolous, malicious, or for failing to state a claim. *Id.* § 1915(g); *see generally Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996) (resolving a number of issues of first impression

---

[3] *See* 141 CONG. REC. S14413 (daily ed. Sept. 27, 1995).

[4] *Id.*

involving § 1915(g)).

Nowhere does the PLRA require a prisoner to pay the entire filing fee in a prior civil case before filing a second complaint. We believe that this fact, in and of itself, warrants reversal of the district court's decision in the instant case. *See Pratt v. Hurley*, 79 F.3d 601, 603 (7th Cir. 1996) (reversing the district court's "homemade rule that paupers can pursue only one case at a time" and noting that such a rule "lacks statutory support and cannot be reconciled with the courts' obligation to exercise their jurisdiction"). In addition, however, we believe that the district court's decision was inconsistent with the balance Congress struck between ensuring poor persons' access to the courts and discouraging prisoners from filing frivolous claims.

We emphasize that Walp has thus far complied with the filing requirements and garnishment procedures of the PLRA with respect to both of his complaints.[5] Under these circumstances, dismissal of Walp's second complaint contradicted the directive of the PLRA that "[i]n no event shall a prisoner be prohibited from bringing a[n action] for the reason that the prisoner has no assets and no means

---

[5] Although the Seventh Circuit has suggested that noncompliance with the requirements of the Act could effect a waiver of IFP status in subsequently filed cases, this rule is not implicated in the instant case. *See Thurman v. Gramley*, 97 F.3d 185, 188 (7th Cir. 1996) ("Now that payment of the filing fee is obligatory, we will take nonpayment (for any reason other than destitution) as a voluntary relinquishment of the right to file future suits in forma pauperis"). We express no view regarding the merits of the Seventh Circuit's position.

by which to pay the initial filing fee." 28 U.S.C. § 1915(b)(4). Conversely, the decision to allow Walp to proceed IFP with his second complaint is consistent with the purposes of the Act, so long as he remains ultimately liable for the costs associated with the case. *See Strickland v. Rankin County Correctional Facility*, 105 F.3d 972, 975 n.2 (5th Cir. 1997) (noting that "the purpose of the Act was to make prisoners feel the deterrent effect of filing fee obligations before burdening the court with frivolous appeals").

This court has recognized that the PLRA was intended "only to penalize litigation that is truly frivolous, not to freeze out meritorious claims or ossify district court errors." *Adepegba*, 103 F.3d at 388. The effect of the district court's decision, however, was precisely to bar a potentially meritorious civil rights complaint solely because Walp had not paid the entire costs associated with filing his first claim--which, for all we know, may also have merit.

Even assuming that one or both of Walp's § 1983 claims are frivolous, the district court's decision remains problematic. The court failed to follow the procedure that this court has established for screening frivolous IFP claims, which requires an initial determination of IFP status based solely on economic factors, followed by an assessment of the applicability of the statutory justifications for dismissal. *Mitchell v. Sheriff Dep't,*

*Lubbock County, Texas*, 995 F.2d 60, 62 n.1 (5th Cir. 1993). Moreover, while the Act explicitly revokes a prisoner's privilege to proceed IFP if the prisoner has had three actions or appeals dismissed as frivolous, malicious, or for failing to state a claim, the district court's decision had the practical effect of limiting Walp to one IFP claim (regardless of its merits). In other words, although Congress has allowed prisoners three strikes before authorizing courts to call them out, the district court impermissibly limited Walp to one swing-—whether he connects or not.

## III. Conclusion

The district court's order, which required a prisoner to pay the entire filing fee in a civil rights case before filing a second complaint, was not supported by the plain language of the statute. Moreover, the court's application of this rule to a prisoner who had complied with the procedures of the PLRA was inconsistent with the purposes underlying the Act. Finally, the district court's order had the effect of impermissibly limiting the number of claims, frivolous or otherwise, that a pauper may bring. For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED with instructions that the district court issue an order requiring payment pursuant to the provisions of § 1915(b)(2) of the PLRA.