**Robert FRIEDLAND, Plaintiff,**

v.

**William FAUVER, et al., Defendants.**

**No. 96–3465 (MLC).**

United States District Court,
D. New Jersey.

March 31, 1998.

Robert Friedland, Leesburg, NJ, pro se.

Jennifer L. Kleppe, Deputy Attorney General, Trenton, NJ, for Defendants.

## OPINION

COOPER, District Judge.

Plaintiff Robert Friedland brought this action pursuant to 42 U.S .C. § 1983 for claims

arising from his arrest and incarceration for violation of the terms of his parole. Currently before the Court are cross motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), and plaintiff's motion for injunctive relief pursuant to Fed. R.Civ.P. 65. The Court has reviewed the pleadings and the parties' written submissions and considered the matter pursuant to Fed.R.Civ.P. 78. For the reasons described below, the Court will deny plaintiff's motions, and grant in part and deny in part defendants' motion for summary judgment.

## I. BACKGROUND

The complaint in this case alleges violations of plaintiff's constitutional rights in connection with state parole violation proceedings which were commenced separately in February and April, 1996. Plaintiff Robert Friedland avers that he was released on parole on August 17, 1995 under the supervision of the New Jersey Department of Corrections. Complaint, ¶ 17; Affidavit of Robert Friedland dated May 11, 1996 ("Friedland Affidavit-1"), ¶ 2. He avers that he continued on parole without incident until February 6, 1996 when he was arrested and incarcerated on a parole violation warrant for moving without permission, which was issued by parole supervisor Howell Dilkes at the request of parole officer Anthony Vitello. Complaint, ¶¶ 16, 17, 19; Friedland Affidavit-1, ¶ 6; Exhibit B attached to Defendants' Brief and Exhibits in Support of Motion for Summary Judgment ("Defendants' Brief").

Friedland avers that a preliminary hearing to determine probable cause was conducted on February 21, 1996 in the presence of Diana Farrell, hearing officer. Friedland Affidavit-1, ¶ 7. Friedland asserts that Vitello presented no evidence at the preliminary hearing to support the claimed violation of moving without permission. Complaint, ¶ 19. Friedland claims to have presented documentary evidence showing that he had not moved, consisting of telephone bills recording long distance calls to his son in New Hampshire from the alleged former residence. Complaint, ¶ 20. He avers that Farrell indicated at the hearing that probable cause had not been shown and that Friedland would therefore be released. Complaint, ¶ 21; Friedland Affidavit-1, ¶ 7.

Friedland asserts that he was informed the next day by his regular parole officer, Peggy MacClymont, that, even though probable cause had not been found, he had to agree to special parole conditions for the intensive supervision program in order to be released. Complaint, ¶¶ 36-37; Friedland Affidavit-1, ¶ 9. He asserts that he therefore agreed to the special conditions and was released on February 23, 1996. Complaint, ¶ 23; Friedland Affidavit-1, ¶ 10.

Neither Farrell nor Vitello have submitted affidavits disputing Friedland's version of the hearing. However, attached to defendants' brief is a document dated February 22, 1996, signed by Diana Farrell and entitled "Notice of Probable Cause Decision." Defendants' Brief, Exhibit C. The notice states: "I find that there is probable cause that the following terms, conditions, and limitations of parole were violated based upon the following evidence and testimony presented at your Probable Cause Hearing." The notice indicates that Friedland was represented by Deidre Hartman and that the bureau of parole was represented by senior parole officer Vitello. It states that Friedland testified that he never moved, although he was asked by the landlord to leave the residence. He admitted to sleeping in his car in the garage the night of February 5th and indicated that he tried unsuccessfully to get in touch with Vitello. The notice states that Vitello read information from the parole record concerning a conversation with Friedland's landlord on February 5, 1995 in which the landlord asserted that Friedland "was thrown out" the prior week. The notice further states:

> The High Impact Diversion Program was discussed and it was agreed by all that the subject would be referred to same.

> It is felt the subject should have spoken with another Officer and advised of his situation.

> The violation is sustained.

> The violation is forwarded to the Board for their consideration. The subject to be released to the High Impact Diversion Program.

Defendants' Brief, Exhibit C, p. 2. On the next page, an "X" appears in the box next to the following language: "The parolee shall be continued on parole pending a final determination by the paroling authority, despite finding of probable cause." *Id.*, p. 3. An "X" also appears next to the hand-typed language: "LIFT WARRANT—Parolee to be released to the High Impact Diversion Program." *Id.*

Friedland asserts that, pursuant to the terms of the intensive supervision program, he reported for urine monitoring twice a week, even though he never had a drug or alcohol problem, and he was checked at his residence three times per week. Complaint, ¶¶ 21–22; Friedland Affidavit–1, ¶ 11.

Friedland avers that on March 18, 1996 he submitted to his parole officer a request to transfer his residence, from Rumson in Monmouth County to Bayville in Ocean County. Friedland Affidavit–1, ¶ 12. He avers that Frasier, a parole officer in Ocean County, and Sanmalonas, a Monmouth County parole officer filling in for officer MacClymont, inspected the proposed residence. Friedland Affidavit–1, ¶¶ 12–13. He avers that Frasier said that the residence is nicer than his own and that Friedland should be a dishwasher, like other parolees, and not an owner. Friedland Affidavit–1, ¶ 13; Complaint, ¶ 48. He avers that Frasier then told him that he would not approve the residence and that he should report to Monmouth County. *Id.*; Complaint, ¶¶ 22–24, 48.

Friedland avers that officer Sanmalonas told him the next week, and noted in the parole file, that the Bayville townhouse could be used as an office, but Friedland should continue sleeping at the Monmouth County residence until the end of the intensive supervision program. Complaint, ¶¶ 22–24; Friedland Affidavit–1, ¶ 14. Friedland avers that officer Sanmalonas also told him that the move would be approved after completion of the program, that Friedland would not be under the direction of Frasier, and that he did not know why Frasier appeared to be "after" Friedland. Friedland Affidavit–1, ¶ 14.

Friedland asserts that he was arrested again on April 8 or 9, 1996 on a parole violation warrant signed by Howell Dilkes and initiated by Peggy MacClymont. He asserts that he was charged with violating the terms of parole by (1) moving without permission and (2) failing to pay restitution of $328,285.00. Complaint, ¶ 26, Exhibit A; Defendants' Brief, Exhibit E. Friedland avers that when he called parole officer Seligman to learn the date of the hearing, she said he is a "con man," that he is in deep trouble, that he's not going anywhere, and that he'll receive notice of the hearing. Complaint, ¶ 32; Friedland Affidavit–1, ¶ 17. He asserts that he received less than 24 hours notice of the preliminary hearing. Complaint ¶ 27.

Friedland asserts that the preliminary hearing was conducted on April 18, 1996. Complaint, ¶ 28; Friedland Affidavit–1, ¶ 19. Friedland avers that Matyus (the hearing officer) and Seligman (the parole officer) refused to wait for his attorney, who had evidence in her possession, on the ground that Friedland need not present evidence until the final revocation hearing. Complaint, ¶ 28; Friedland Affidavit–1, ¶ 19; Affidavit of Robert Friedland attached to cross-motion for summary judgment ("Friedland Affidavit–2"), ¶ 7. Friedland avers that Seligman appeared at the preliminary hearing on behalf of MacClymont, his parole officer. Friedland Affidavit–1, ¶ 17. He asserts that Seligman repeatedly laughed during Friedland's testimony. Complaint, ¶ 31. He avers that Seligman was not his parole officer, did not know the facts of his case, and was unable or unwilling to answer his questions. Friedland avers that defendants' assertion that he questioned her at length during the hearing is an exaggeration of the facts. Friedland Affidavit–2, ¶ 17. He asserts that Seligman and Matyus denied him the right to cross-examine witnesses and to see evidence against him, *i.e.*, the statements referred to in the violation notice on which the alleged violations were based. Complaint, ¶ 29; Friedland Affidavit–1, ¶ 18. He further avers that Matyus and Seligman refused to admit witnesses who were on the witness list and were present at the jail. Friedland Affidavit–2, ¶ 7.

In addition, Friedland avers that Farrell forwarded a statement to a deputy attorney general regarding another court matter in

which she said that Friedland would remain incarcerated for the next nine months. He avers that the statement was made on April 15, 1996, three days prior to the preliminary hearing. Complaint, ¶ 32; Friedland Affidavit–1, ¶ 20.

Friedland asserts that he did not violate the terms of his parole. With respect to the first alleged violation, he avers that he did not change his residence. Friedland Affidavit–1, ¶ 25. He asserts that no evidence was presented at the hearing documenting the alleged statement of his roommate referred to in the violation notice, but not provided. Complaint, ¶ 34. He avers that the alleged statement of his roommate that he had moved was contradicted by the roommate's sworn statement contained in a municipal complaint against Friedland dated April 4, 1996 stating Friedland's address. Friedland Affidavit–1, ¶ 25 and Complaint–Summons to appear in Municipal Court of Point Pleasant Beach, attached to Complaint. He also avers that his roommate had been staying at the home of the roommate's girlfriend, and that the roommate told him that he had not given a statement to the parole officers. Friedland Affidavit–1, ¶ 26. He further asserts that officer MacClymont, who was not at the hearing, had in February 1996 permitted him to buy the townhouse using the business name "David Cohen." Complaint, ¶ 51. He avers that Sanmalonas approved his use of the townhouse, except for sleeping. Complaint, ¶¶ 22–24; Friedland Affidavit–1, ¶ 14.

With respect to the second alleged violation, he asserts that he made no restitution payments because he was on Social Security Disability for an illness he contracted in jail, and officers Vitello and MacClymont had told him that he was not required to pay restitution while receiving disability payments. In addition, he asserts that officer MacClymont had agreed that his restitution payments would not begin until he earned money through self-employment. Complaint, ¶¶ 49–50.

Friedland further avers that he did not receive the preliminary hearing decision until May 13, 1996, 25 days after the hearing, and that the revocation hearing was not conducted at any time in his 120 day incarceration for alleged violation of parole. Friedland Affidavit–1, ¶ 16. Friedland avers that Seligman and Matyus were biased and that the probable cause decision was not based on the facts, but was a reaction to certain recent atrocities committed by parolees. Friedland Affidavit–1, ¶¶ 21–24. He asserts that their conduct was attributable to inadequate training and lack of regulatory enforcement by William Fauver, the Commissioner of the New Jersey Department of Corrections at the time. Complaint, ¶¶ 43–44.

It is undisputed that Friedland was incarcerated for 120 days on the basis of the April, 1996 parole violation warrant without a final revocation hearing. It is also undisputed that on August 5, 1996 the New Jersey State Parole Board terminated the revocation process and directed the withdrawal of the parole revocation warrant and the release of Friedland. Defendants' Brief, Exhibit I.

The only affidavits submitted on behalf of defendants are the affidavit of Guy Matyus dated May 30, 1997 attached to Defendants' Brief as Exhibit G ("Matyus Affidavit"), an affidavit attesting to the authenticity of the parole records, and an affidavit of counsel concerning filing fee payments. Guy Matyus avers that he was the hearing officer at the April 1996 preliminary hearing and that Ronnie Seligman presented evidence on behalf of the state. Matyus Affidavit, ¶ 2. He avers that he informed plaintiff several times that he had the right to postpone the hearing in order to obtain an attorney, but plaintiff chose to represent himself. *Id.*, ¶¶ 3, 5. He avers that he called Deirdre Hartman prior to the hearing and she informed him that plaintiff had not provided her with a retainer for the hearing. *Id.*, ¶ 4. He avers that he informed plaintiff of his right to present evidence and witnesses and that he had the right to cross examine the state's witnesses, but that he did not bring any witnesses or evidence. *Id.*, ¶¶ 6, 7. He avers that the only witness presented by the state was officer Seligman, and that plaintiff was permitted to question her at length. *Id.*, ¶ 7.

Defendants have not submitted copies of the parole violation warrant or the documents causing its issuance. Defendants have submitted a copy of the "Notice of Probable

Cause Hearing" dated April 16, 1996 scheduling a preliminary hearing to determine probable cause on April 18, 1996. In the section of the form designed to inform the parolee of the nature and circumstances of the alleged parole violation "with specific documents and witnesses listed in parentheses, as evidence for each violation," the following language appears:

See attached violations.

Sr PO MacClymont

Hearing Officer

Defendants' Brief, Exhibit E, p. 2. Attached to the notice are 21 pages, all hand-written, except for one page. The first handwritten page begins with "Name: Robert Friedland, Inst. & # : P254258." On the next line is the typed word "*VIOLATIONS:*" The rest of the page is handwritten and begins with:

4) you failed to obtain your parole officer's approval for any change in your residence as evidenced by numerous documents in your own name & in the alias of David Cohen, indicating your address is 22 Quail Run, Bayville; by the statements of your roommate [ ] that you were no longer living in Rumson; and by the Statement of [ ] Sales Representative at Mill Creek Island Condos indicating that you bought a condo under the name of David Cohen....

The next paragraph, with no numbered paragraphs in between, begins:

8) you failed to make payment to the Bureau of Parole of the $328,285.00 in restitution ordered by the court....

The "Notice of Probable Cause Decision" dated April 22, 1996 and May 8, 1996 states that hearing officer Matyus found probable cause based on the following evidence and testimony presented at the hearing:

Subject was served his Notice of Probable Cause Hearing on 4/17/96 at Monmouth County Correct., Inst., where he remains to date. Subject was advised of Hearing Officer's Miranda Type Warning and identified his signature on his parole certificate. Subject will be represented at the Final Revocation Hearing by a private attorney. Sr. Parole Officer Seligman was present representing the Bureau of Parole. *VIOLATIONS:*

4.: This violation was read to subject. Subject denied that he had ever slept at 22 Quail Run in Bayville. He stated that he slept at the approved residence at 65 East River Rd., in Rumson and remained there—that he slept there every night. He challenged the statements of Kyle Lettis, as indicated in chrono entries dated 4/8/96 and 4/10/96, and claimed that Kyle Lettis, from whom he rented a room in the condo at 65 East River Rd., also resided there but only stayed at the residence 2–3 days per week. Subject questioned how Kyle Lettis could make such claims that he hadn't lived at the Rumson residence when he wasn't there most of the time. Parole Officer noted and the record reflects that according to chrono entries dated 4/8/96 and 4/10/96, [ ] advised Sr. Parole Officer MacClymont on 4/8/96 and District Parole Supervisor Dilkes on 4/10/96 that subject had not lived with him for some time.

Violation sustained.

8.: This violation was read to subject. Subject admitted he had not made any restitution payments while under parole supervision. Subject claimed he had been given approval by two different Parole Officers to defer payments. When presented with the copy of his letter of revenue obligation dated 8/17/95, subject admitted he had signed same. The revenue obligation document ordered regular monthly restitution payments of $300.00. When questioned about the $1000.00 plus cash subject had in his possession at the time of his arrest, subject stated the cash was for a loan payment.

Parole Officer noted and the record reflects that during the p[e]riod subject was a supervised parolee, subsequent to one payment of $170.00 made on 8/21/95, he made no further payments toward his restitution balance of $328,115.00.

Violation sustained.

Defendants' Brief, Exhibit F, pp. 1, 3. The Notice provides that the parolee shall remain in confinement pending the final revocation hearing, and the following language follows: "In view of subject's violations, it is felt he would not appear for the Final Revocation

Hearing if he were released from custody." *Id.*, p. 2.

Friedland claims that defendants violated his Fourth Amendment right to be free from illegal seizures, his Fourteenth Amendment right to due process of law, his Fifth, Sixth and Fourteenth Amendment right to be free from official harassment and intimidation, his Fourth and Fourteenth Amendment right to be free from malicious prosecution, and his Fourteenth Amendment right to be free from arbitrary actions of state parole officials. Complaint, ¶ 45.

## II. DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[W]hen determining whether the moving party has proven the absence of a genuine material issue of fact, the facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true, and the

inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080–81 (3d Cir.1996) (citations and internal quotation marks omitted). However, the party opposing the motion "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Aman*, 85 F.3d at 1081 (citation omitted).[1]

### B. Defendants' Motions for Summary Judgment

Defendants raise the following grounds in support of their motions for summary judgment: (1) damage claims against them in their official capacities are barred by the Eleventh Amendment; (2) defendants Fauver and DiSabato are not liable under § 1983 because they were not personally involved in any alleged constitutional violations; (3) damage claims against defendants Farrell and Vitello in their individual capacities are barred by absolute immunity; (4) defendants are protected by qualified immunity; (5) the due process claims alleged by plaintiff are not cognizable under 42 U.S.C. § 1983; (6) summary judgment should be granted defendants because plaintiff has not alleged a compensable injury; (7) punitive damages are not warranted; (8) summary judgment should be granted defendants because plaintiff has missed monthly payments towards his filing fee; (9) summary judgment should be granted in favor of Peggy MacClymont because she is deceased and the claims do not survive. *See* Defendants' Brief. The

---

1. *See also Celotex*, 477 U.S. at 330 n. 2, 106 S.Ct. 2548 ("any doubt as to the existence of a genuine issue for trial should be resolved against the moving party"); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (to survive summary judgment, non-movant must only show more than "some metaphysical doubt as to the

material facts"); *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992) ("if the opponent has exceeded the 'mere scintilla' threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent"), *cert. denied*, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

Court will address each one of these arguments in turn.

### 1. Official Capacity and the Eleventh Amendment

■ The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "This immunity is based on a two-part presupposition: (1) each State is a sovereign entity in our federal system and (2) it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *In re Sacred Heart Hosp. of Norristown v. Pennsylvania Dept. of Public Welfare*, 133 F.3d 237, 241–42 (3d Cir.1998) (citations and internal quotation marks omitted).

■ The Eleventh Amendment has been interpreted as preventing suits in federal court against states, or state officials if the state is the real party in interest. *Hindes v. Federal Deposit Insurance Corp.*, 137 F.3d 148, 165 (3d Cir.1998). It is settled that "an official-capacity suit against a state officer is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself." *Hafer v. Melo*, 502 U.S. 21, 26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (citation and internal quotation marks omitted). Accordingly, the Eleventh Amendment bars Friedland's claims for damages against defendants in their official capacities, and those damage claims will be dismissed. The Court will grant summary judgment to defendants on Friedland's official capacity claims for damages.[2]

### 2. Liability of Supervisory Officials

■ Defendants William Fauver and Mary DiSabato argue that the claims against them should be dismissed because the plaintiff does not allege that they had any personal involvement in the alleged constitutional deprivations, that they had knowledge of the violations and acquiesced, that they created a policy or custom that resulted in the wrong, or that they were grossly negligent in managing subordinates. Defendants' Brief, pp. 9–10. Because defendants have not submitted affidavits or other evidence to dispute the allegations in the complaint, the question is whether, accepting the allegations in the complaint and the averments in plaintiff's certifications as true and drawing all reasonable inferences in his favor, there is a material issue of disputed fact concerning defendants' personal liability. *See Adickes*, 398 U.S. at 157, 90 S.Ct. 1598; *Hamilton v. Leavy*, 117 F.3d 742, 748 (3d Cir.1997). However, in assessing liability, "a court need not credit a complaint's 'bald assertions' or 'legal conclusions.' " *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir.1997) (citations omitted).

■ To recover against a defendant under 42 U.S.C. § 1983,[3] the plaintiff must prove that the defendant has deprived him of a right secured by the Constitution and laws of the United States and that the defendant acted under color of state law. *Adickes*, 398 U.S. at 152, 90 S.Ct. 1598. A defendant in a § 1983 action must have some causal connection to the alleged wrongdoing. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1152–54 n. 13 (3d Cir.), *cert. denied*, 516 U.S. 858, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995); *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). A supervisory defendant may be found liable where it is shown that he or she: (1) participated in violating plaintiff's rights; (2) directed others to vio-

---

**2.** The Eleventh Amendment does not bar suits against a state where a state official is sued in his official capacity for prospective injunctive relief. *See Hindes v. Federal Deposit Insurance Corp.*, 137 F.3d 148, 165–66 (3d Cir. Feb.19, 1998); *Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

**3.** 42 U.S.C. § 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

late them; (3) as the person in charge, had knowledge of and acquiesced in his subordinates' violations; or (4) tolerated past or ongoing misbehavior. *Baker v. Monroe Tp.,* 50 F.3d 1186, 1190–91 & n. 3 (3d Cir.1995); *see also Bonenberger v. Plymouth Township,* 132 F.3d 20 (3d Cir.1997).

█ In this case, Friedland asserts in the complaint that Fauver's failure to train and supervise the defendants caused his constitutional deprivations. However, nothing in the complaint or in the affidavits and documents submitted by the parties insinuates that Fauver was aware of any alleged wrongdoing by his subordinates or aware of the need for additional training to prevent constitutional violations of this nature. Because plaintiff's allegations do not indicate a causal connection between plaintiff's deprivations and any improper acts by Fauver, the Court will grant summary judgment in his favor on all claims.

█ With respect to DiSabato, the picture is not quite so clear. Although Friedland does not refer to one specific action or inaction by DiSabato, he quite vehemently complains that the April preliminary hearing decision was not reviewed in a timely fashion and the final revocation hearing was not conducted within 60 days of his arrest, resulting in his incarceration from April 18, 1996 until at least August 6, 1996.

The Court has examined New Jersey's regulations governing the parole revocation process. The regulation entitled "Board panel action pending revocation hearing" provides for review of the preliminary hearing decision by a parole board panel after receipt and consideration of the parolee's written exceptions or comments on the decision. *See* N.J.A.C. 10A:71–7.10(d), 10A:71–7.11(a). The parole board panel has the power to modify or overrule the decision of the preliminary hearing officer, considering that the "parolee shall be continued in custody or

taken into custody only where, in the opinion of the Board panel, the parolee represents a danger to public safety or where the parolee may not appear at the revocation hearing." N.J.A.C. 10A:71–7.11(a) and (c). The regulations also require a final parole revocation hearing to be conducted within 60 days of arrest if the preliminary hearing officer found probable cause of parole violation. N.J.A.C. 10A:71–7.12(a)(1); 10A:71–7.13(a). The regulations place the responsibility for scheduling hearings and case reviews by the board and board panel on the chairman of the parole board, in this case Mary Keating DiSabato. N.J.A.C. 10A:71–1.3(a).

It can be reasonably inferred that the person who is responsible for scheduling is also responsible for the delay in scheduling of which Friedland complains. Accordingly, Friedland has adequately alleged a causal connection between DiSabato's failure to schedule a case review or revocation hearing prior to August 5, 1996 and his incarceration pending that review.

*3. Absolute Immunity*

Defendants[4] argue that they are absolutely immune from damages because the wrongdoing alleged against them in the complaint was performed in their adjudicatory capacities. Defendants' Brief, pp. 10–12.

█ "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed,* 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991); *accord Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). It is settled that, "in determining immunity, [a court] examine[s] the nature of the function performed, not the identity of the actor who performed it." *Kalina v. Fletcher,* —— U.S. ——, ——, 118 S.Ct. 502, 508, 139 L.Ed.2d 471 (1997) (citation and internal quotation marks omitted).[5] "[T]he

---

**4.** The attorney for defendants states in Defendants' Brief that Peggy MacClymont "has passed away and it is the State's position that plaintiff's claims against MacClymont do not survive." Defendant's Brief, note, p. 10. Because the claims survive, the Court will consider whether the party to be substituted for MacClymont is immune.

*See* subsection (8), *infra.* For the sake of simplicity, the Court will continue to refer to "MacClymont ."

**5.** In *Kalina,* —— U.S. at —— – ——, 118 S.Ct. at 509–510, the Supreme Court held that, while a prosecutor is absolutely immune for drafting and

official seeking absolute immunity bears the burden of showing that such immunity · is justified for the function in question." *Burns*, 500 U.S. at 486, 111 S.Ct. 1934.

▄▄▄▄▄ "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (quoting *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Judicial immunity is "essential to protect the integrity of the judicial process." *Cleavinger*, 474 U.S. at 200, 106 S.Ct. 496. While the Supreme Court has extended absolute immunity to certain other officials for conduct closely associated with the judicial process,[6] the Court has not decided whether or under what circumstances state parole officials enjoy absolute immunity. *See Cleavinger*, 474 U.S. at 200, 106 S.Ct. 496; *Martinez v. California*, 444 U.S. 277, 285 n. 11, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980).

▄▄▄▄▄ "To be sure, the line between absolute immunity and qualified immunity often is not an easy one to perceive and structure." *Cleavinger*, 474 U.S. at 206, 106 S.Ct. 496. Courts of Appeals addressing the immunity of parole officials have reached differing conclusions. *See* Julio A. Thompson, *A Board Does Not a Bench Make: Denying*

*Quasi–Judicial Immunity to Parole Board Members in Section 1983 Damages Actions,* 87 Mich.L.Rev. 241, 244 (1988). Following the lead of the Ninth Circuit Court of Appeals, the First, Fourth, Seventh, and Eighth Circuits have generally awarded parole officials absolute immunity for actions taken in the processing of alleged parole violations.[7] However, the Court of Appeals for the Third Circuit has ruled that "probation and parole officers are entitled to absolute immunity when they are engaged in adjudicatory duties," but "[i]n their executive or administrative capacity, probation and parole officers are entitled only to a qualified, good faith immunity," *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir.1989); *accord Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir.1986); *Thompson v. Burke*, 556 F.2d 231, 237–40 (3d Cir.1977). In this Circuit, parole board members and officers are entitled to absolute immunity only when serving as a hearing examiner or making a decision to revoke or deny parole. *Wilson*, 878 F.2d at 776; *Harper*, 808 F.2d at 284; *Thompson*, 556 F.2d at 237–40.[8]

The Third Circuit Court of Appeals has accordingly determined that parole officials are entitled to only qualified immunity for the following conduct: (1) investigating allegations of parole violations, *Wilson*, 878 F.2d at 776; (2) typing a warrant application for the arrest of the parolee and signing the warrant, *id.*[9]; (3) assisting the police

6. *See Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (witnesses in judicial proceedings); *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (administrative law judge and federal hearing examiner); *Imbler v. Pachtman*, 424 U.S. 409, 424–26, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)' (prosecutors performing prosecutorial function).

7. *See, e.g., Gale v. Moore*, 763 F.2d 341 (8th Cir.1985) (per curiam) (immunity to parole board members carrying out official duties); *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984) (parole revocation and related actions are absolutely immune as part of the decision process); *Anderson v. Boyd*, 714 F.2d 906 (9th Cir. 1983) (immunity for the imposition of parole conditions and parole revocation).

filing a motion for an arrest warrant, an information, and a supporting certification, a prosecutor is not entitled to absolute immunity for personally attesting to inaccurate factual statements to establish probable cause for plaintiff's arrest.

8. *Cf. Jones v. Moore*, 986 F.2d 251 (8th Cir.1993) (per curiam) (parole board member is entitled to absolute immunity when deciding to grant, deny, or revoke parole, but parole officer is not entitled to absolute immunity for issuance of an allegedly false parole violation report); *Russ v. Uppah*, 972 F.2d 300, 303–304 (10th Cir.1992) (parole officer is not entitled to absolute immunity for intentionally having parolee held without charge and presenting false information to have parole revoked); *Wolfel v. Sanborn*, 691 F.2d 270 (6th Cir.1982) (finding that parole officers are entitled to only qualified immunity for arresting and imprisoning parolee for 27 days without holding a preliminary hearing to determine probable cause), *cert. denied*, 459 U.S. 1115, 103 S.Ct. 751, 74 L.Ed.2d 969 (1983).

9. *See also Mee v. Ortega*, 967 F.2d 423, 429 (10th Cir.1992) (holding that parole official's decision to hold parolee in jail pending the parole revocation hearing is protected by qualified rather than absolute immunity); *Nelson v. Balazic*, 802 F.2d 1077, 1079 (8th Cir.1986) (parole officer is pro-

in initiating a criminal investigation against the parolee, *id.*; (4) providing false information that a parolee violated the terms of parole in order to obtain a parole violation arrest warrant, *Harper*, 808 F.2d at 283–84 [10]; (5) falsely informing the parole board that the parolee had been arrested on new criminal charges, *id.*; (6) charging the parolee with wrongdoing and presenting evidence to that effect, *id.*; (7) performing the "general responsibilities" of a parole or probation officer, *id.*; (8) a parole board member's meeting with and interviewing a parolee concerning an alleged parole violation, and presenting information to the parole board which resulted in the board's decision to revoke parole based on a technical parole violation, *Thompson*, 556 F.2d at 238–39; and (9) conducting a warrantless search of a parolee's residence without probable cause, *Shea v. Smith*, 966 F.2d 127, 130–31 (3d Cir.1992).

In this case, all but one of the challenged actions of Diana Farrell and Guy Matyus were taken in their capacities as hearing officers at Friedland's preliminary hearings in February and March.[11] The remaining claim against Farrell, *i.e.*, she told a deputy attorney general three days before Friedland's April preliminary hearing that he would likely be incarcerated for several months, alleges no unconstitutional conduct.[12] This Court therefore finds that defendants Diana Farrell and Guy Matyus are protected by absolute immunity, and will grant summary judgment in their favor on all damage claims.

However, none of the alleged wrongdoing of parole officers Dilkes, Vitello, MacClymont, Frasier, and Seligman was performed in any adjudicatory capacity. *Cf. Thompson*, 556 F.2d at 238 (finding that those who do not make, but merely carry out, adjudicatory decisions are not entitled to absolute immunity). These defendants are therefore not entitled to absolute immunity and are shielded only by qualified immunity.

The wrongdoing alleged against DiSabato concerns her failure to schedule a case review of the preliminary hearing officer's decision by a board panel or a final parole revocation hearing within a reasonable time of Friedland's arrest. Since scheduling duties are administrative in nature, DiSabato is not entitled to absolute immunity.[13]

### 4. Qualified Immunity

Defendants contend that summary judgment should be entered in their favor based on qualified immunity because they did not violate any clearly established constitutional right of Friedland. Defendants' Brief, Point V, pp. 18–25.

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (citations and internal quotation marks omitted). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. at 818–19, 102 S.Ct. 2727. Where a defendant has submitted no affidavits, summary judgment will be granted the defendant on the basis of qualified immunity only if the actions plaintiff alleges defen-

---

tected by qualified immunity for arresting parolee); *Galvan v. Garmon*, 710 F.2d 214 (5th Cir. 1983) (probation officer is shielded by only qualified immunity for erroneously causing probationer's arrest and incarceration for 20 days), *cert. denied*, 466 U.S. 949, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984).

**10.** *See also Ray v. Pickett*, 734 F.2d 370, 374 (8th Cir.1984) (qualified immunity for probation officer's filing false violation report with parole commission).

**11.** Friedland claims, *inter alia*, that Farrell was biased, denied him the right to confront adverse witnesses, and imposed special parole conditions without probable cause.

**12.** Defendant Matyus was the hearing officer at the April hearing, and Friedland does not allege that Farrell was in any way involved in the parole revocation process which began in April.

**13.** *See* Subsection (4), pp. 32–33, *infra*.

dant to have taken do not violate clearly established law. *Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. 3034. "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading quali-fied immunity is entitled to dismissal before the commencement of discovery. Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly es-tablished law, the defendant is entitled to summary judgment if discovery fails to un-cover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Behrens v. Pelletier,* 516 U.S. 299, 306–07, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Mitchell v. For-syth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). *See also Schrob v. Cat-terson,* 948 F.2d 1402, 1421 (3d Cir.1991); *Brown v. United States,* 851 F.2d 615, 619–20 (3d Cir.1988).

(a) Obtaining Arrest Warrants

Here, Friedland alleges that defendants Dilkes, Vitello, and MacClymont wrongfully obtained parole violation warrants resulting in Friedland's February 6, 1996 and April 9, 1996 arrests and incarceration and/or pre-pared inaccurate parole violation reports which were used to establish probable cause at the preliminary hearings. Friedland also challenges Vitello's and Seligman's conduct in presenting the state's case for probable cause at his February and April preliminary hear-ings. The Court will first discuss whether Dilkes, Vitello, and MacClymont are entitled to qualified immunity for their roles in Fried-land's arrest and incarceration. Next the Court will consider whether Vitello and Sel-igman are entitled to qualified immunity for their roles in presenting the state's case. Lastly, the Court will consider whether the alleged conduct of DiSabato and Frasier vio-lated any of plaintiff's clearly established rights.

 The Fourth Amendment prohib-its a governmental officer from arresting a citizen except upon probable cause.[14] "Prob-able cause to arrest requires more than mere suspicion ... probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir.1995). "Generally, the exis-tence of probable cause is a factual issue." *Groman v. Tp. of Manalapan,* 47 F.3d 628, 635 (3d Cir.1995). An officer is not entitled to qualified immunity for an unconstitutional arrest if "a reasonably well-trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs,* 475 U.S. 335, 345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see also Gelatt v. County of Broome, New York,* 811 F.Supp. 61, 69–70 (N.D.N.Y.1993) (applying Malley to determine that probation officer was protected by qualified immunity for obtaining arrest warrant).

 In this case, Friedland had a clearly established right not to be arrested on a parole violation warrant without probable cause that he violated the terms of his parole. Accepting the allegations against Vitello as true, he violated none of Friedland's clearly established rights. Friedland alleges that Vitello obtained a parole violation warrant on the basis of the landlord's assertion that Friedland had been thrown out, which pro-vides more than a mere suspicion that Fried-land moved. Hence, Vitello is entitled to qualified immunity for effecting Friedland's arrest in February.

 However, with respect to the April arrest, there are genuine issues of material fact concerning probable cause to arrest Friedland for parole violation and concerning the conduct of Dilkes, MacClymont, and Sel-

**14.** *See Kalina v. Fletcher,* —— U.S. ——, ——, 118 S.Ct. 502, 509, 139 L.Ed.2d 471 (1997) ("The Fourth Amendment requires that arrest warrants be based 'upon probable cause, supported by Oath or affirmation' "); *Albright v. Oliver,* 510 U.S. 266, 274–75, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (the Fourth Amendment, not substan-tive due process, prohibits arrests without proba-ble cause); *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (offi-cer who requests a warrant without probable cause may be liable for damages in § 1983 action for arrest in violation of Fourth Amendment).

igman in effecting his arrest.[15] Issues of material fact concerning probable cause to arrest based on failure to pay restitution are raised by Friedland's assertion that MacClymont and Vitello excused him from making restitution payments because he was on disability. *Cf. Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) (incarceration for failure to pay restitution where probationer is unable to do so violates Eighth Amendment). An issue of fact concerning probable cause to arrest based on moving without permission is likewise raised by Friedland's averment that MacClymont approved his use of the name "David Cohen" as a business name, and another parole officer approved Friedland's use of the townhouse for everything except sleeping until completion of the intensive supervision program.

(b) Violations of *Morrissey v. Brewer*

█ Friedland also charges violations of the procedural requirements contained in *Morrissey v. Brewer,* 408 U.S. 471, 485, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In *Morrissey,* 408 U.S. at 486–87, 92 S.Ct. 2593, the Court set forth the following procedural requirements for the preliminary hearing:

> [T]he parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, [a] person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if

the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.

> The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position. . . .

Friedland asserts that he was not provided adequate notice of the hearing. There are genuine issues of material fact as to whether providing less than 24 hours notice of the hearing was adequate under *Morrissey,* and, if not, who provided the notice.[16] Friedland avers that he called Seligman to find out the date for the hearing, and that she said he is a "con man" and he'll receive the notice. Friedland Affidavit–2, ¶ 17. He asserts that he received the notice less than 24 hours prior to the hearing, but he does not describe how this affected his preparation for the hearing or say who provided the notice. Complaint, ¶ 27. Considering the difficulties confronting an incarcerated parolee who seeks to bring letters, documents, or individuals who can give relevant information, there is a genuine issue of fact as to whether Friedland was given adequate notice to prepare his case. "How can [a parolee] request the presence of persons who have given adverse information if he has no prior notice as to the information being relied upon, or the source thereof?" *Belk v. Purkett,* 15 F.3d 803, 806 (8th Cir.1994). If the notice was inadequate, then there is a genuine issue of fact concerning who was responsible for providing proper notice.

█ Friedland also complains that, contrary to the *Morrissey* requirements, Selig-

---

**15.** The Notice of Probable Cause Hearing indicates that it is based on the violations report of MacClymont. Friedland alleges that Dilkes signed the parole violation warrant at the request of MacClymont. This is consistent with New Jersey regulations which allow a parole officer to request a parole violation warrant and a District Parole Supervisor to issue a warrant. *See* N.J.A.C. 10A:71–7.2(a) and (b).

**16.** The state parole revocation regulations provide that it "shall be the responsibility of the parole officer, District Parole Supervisor or the designated representative of the Commission, as appropriate, to give written notice to the parolee of the time, date and place of the preliminary hearing at least three days prior to the preliminary hearing unless the parolee waives such notice." N.J.A.C. 10A:71–7.7(a).

man did not let him see the written statements of his roommate and others who provided adverse information, and that she failed to present a written statement, affidavit or testimony of any adverse factual witness at the hearing. There is a genuine issue of fact concerning whether Friedland was given the opportunity to request the presence of these persons.[17] If he were given the opportunity, there are genuine issues as to whether and to whom he made the request, and why the witnesses were not present. There is also a genuine issue of fact as to whether Seligman's presentation of the case for revocation was founded on facts establishing probable cause or based exclusively on her dislike of Friedland. Friedland Affidavit–2, ¶ 17.

*Morrissey* also determined that the final revocation hearing "must be tendered within a reasonable time after the parolee is taken into custody" and that a "lapse of two months . . . would not appear to be unreasonable." *Morrissey,* 408 U.S. at 488, 92 S.Ct. 2593. There is a genuine issue of material fact concerning the reasonableness of DiSabato's failure to schedule a revocation hearing or even a panel case review for approximately four months. *See Gaddy v. Michael,* 519 F.2d 669, 673 (4th Cir.1975) (finding that what is a reasonable time depends upon all the circumstances of the particular case), *cert. denied,* 429 U.S. 998, 97 S.Ct. 524, 50 L.Ed.2d 608 (1976); *United States ex rel. Buono v. Kenton,* 287 F.2d 534 (2nd Cir.) (holding that delay of 113 days in conducting a parole revocation hearing is unreasonable), *cert. denied,* 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed.2d 44 (1961); *Sherman v. Hirshman,* 427 F.Supp. 12, 14 (D.N.J.1976) (noting that delays in excess of three months have generally been held to be unreasonable).

■ There are no genuine issues of fact concerning the liability of Frasier and Vitello because Friedland fails to allege the violation of any clearly established rights by those defendants. The lone allegation against Frasier, *i.e.,* he failed to approve Friedland's proposed new residence because it was "nicer" than his own residence, violates no clearly established right. While Friedland asserts that Vitello violated *Morrissey* during his presentation of the case at the February hearing, Friedland has no standing to challenge his conduct because he was not harmed. Even if Vitello violated *Morrissey,* Friedland was released as a result of the February preliminary hearing, and he has no protected liberty interest in remaining free of the special parole conditions of the intensive supervision program.[18]

The Court will grant summary judgment in favor of Frasier and Vitello on the basis of qualified immunity. Because there exist genuine issues of material fact concerning the violation of Friedland's clearly established rights by DiSabato, Dilkes, MacClymont, and Seligman, their motions for summary judgment on the ground of qualified immunity will be denied.

### 5. Cognizability of § 1983 Action

■ It was established in *Preiser v. Rodriguez,* 411 U.S. 475, 488–90, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks speedier release, even though such a claim may come within the literal terms of § 1983. Furthermore, in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held that a § 1983 action for damages for an unconstitutional imprisonment is not cognizable unless the underlying conviction

---

17. Although the "Notice of Probable Cause Hearing" informed Friedland of "[t]he right to confront and cross-examine adverse witnesses, unless the Hearing Officer determines that such witnesses would be subjected to risk or harm," *see* Defendants' Brief, Exhibit E, it did not inform him that he had the right to request that a person who has given adverse information on which a parole violation is based be available at the hearing for questioning. *Morrissey,* 408 U.S. at 487, 92 S.Ct. 2593.

18. New Jersey parole revocation regulations authorize a preliminary hearing officer to impose additional parole conditions. "When the hearing officer determines that the parolee should be released from custody, the hearing officer shall establish any parole conditions deemed reasonable in order to reduce the likelihood of recurrence of criminal behavior." N.J.A.C. 10A:71–7.9(c).

or sentence has been invalidated. The Supreme Court held:

> that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486–87, 114 S.Ct. 2364.

In *Edwards v. Balisok*, 520 U.S. 641, ——, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997), the Supreme Court extended *Heck* by holding that a prisoner's § 1983 action challenging a prison disciplinary sanction and seeking "declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" unless the disciplinary sanction has been overturned or invalidated.

Federal courts have held that *Heck* applies to § 1983 damage actions challenging the fact or duration of parole release on the rationale that the plaintiff is in effect attacking his confinement and state court remedies have not been exhausted.[19] *See White v. Gittens*, 121 F.3d 803 (1st Cir.1997) (barring § 1983 claim for damages and declaratory relief regarding state decision to revoke parole); *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir.1997) (barring § 1983 damage action challenging state parole ineligibility decision); *Burkett v. Love*, 89 F.3d 135 (3d Cir. 1996) (ordering dismissal based on failure to exhaust state remedies of inmate's claim that parole was denied in retaliation for prior successful habeas petition) *Schafer v. Moore*, 46 F.3d 43 (8th Cir.1995) (barring inmate's

challenge to state denial of parole); *Artway v. Pallone*, 672 F.2d 1168, 1178 (3d Cir.1982) (finding that inmate's challenge to parole ineligibility under sex offender act is cognizable only in a habeas corpus petition and plaintiff's failure to exhaust his state remedies precludes habeas relief); *Benson v. New Jersey State Parole Bd.*, 947 F.Supp. 827 (D.N.J. 1996) (barring inmate's § 1983 action seeking declaratory relief and punitive damages for alleged denial of a timely parole hearing and erroneous calculation of parole eligibility date). *Cf. Spencer v. Kemna*, —— U.S. ——, 118 S.Ct. 978, 989, 140 L.Ed.2d 43 (1998) (Souter, J., concurring) ("a former prisoner, no longer 'in custody,' may bring a § 1983 action establishing the unconstitutionality of a conviction or confinement without being bound to satisfy a favorable-termination requirement that it would be impossible as a matter of law for him to satisfy").

In this case, it is undisputed that the New Jersey State Parole Board reviewed Friedland's parole revocation case on August 5, 1996 and determined to terminate the revocation process and direct the Bureau of Parole to withdraw the parole warrant and release Friedland. *See* Letter from Mary Keating DiSabato dated August 6, 1996, Defendants' Brief, Exhibit I. Friedland's present confinement is unrelated to the parole revocation processes at issue in this complaint. A petition for habeas corpus is therefore not the appropriate remedy. *Preiser*, 411 U.S. at 488–90, 93 S.Ct. 1827. The precondition for a § 1983 damage action mandated by *Heck*, *i.e.*, the invalidation of the decision to revoke Friedland's parole, was satisfied when the Parole Board terminated the revocation process and released Friedland in August 1996. This Court will therefore deny defendants' motion for summary judgment based on *Preiser* and *Heck*.

### 6. Compensable Injury

Defendants MacClymont and Seligman also seek summary judgment on the ground that Friedland seeks to recover dam-

---

19. A state prisoner is required to exhaust available state remedies prior to invoking federal habeas relief. 28 U.S.C. §§ 2254(b)(1) and (c)

(1996); *Preiser*, 411 U.S. at 489–92, 93 S.Ct. 1827.

ages for emotional injury suffered in custody and that such a claim is prohibited by the PLRA, 42 U.S.C. § 1997e. Defendants' Brief, Point VI, p. 25.

The PLRA, in pertinent part, provides:

No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e). The plain language of 42 U.S.C. § 1997e(e) limits its application to the bringing of a civil action in this Court. The language does not authorize or relate to the dismissal of an action or to the entry of summary judgment for defendants in an action that has already been brought.[20] Assuming *arguendo* that the statute governs this stage of the proceeding, it is not applicable to this case. Friedland does not seek damages for mental or emotional injury. He seeks damages for unconstitutional incarceration resulting from his arrest without probable cause and his continued incarceration after the preliminary hearing.[21] Accordingly, 42 U.S.C. § 1997e(e) does not bar this action, and defendants' motion for summary judgment on the basis of this statute will be denied.

### 7. Payment of Filing Fee

■ Defendants MacClymont and Seligman next contend that they are entitled to summary judgment on the ground that Friedland failed to make statutorily mandat-

ed payments to the Clerk of this Court toward the filing fee. 28 U.S.C. § 1915(b)(2).

Section 1915(b)(2) provides:

After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

A regulation of the New Jersey Department of Corrections entitled "Group deposits and deductions," which is contained in the "Inmate Accounts" subchapter of the "Fiscal Management" chapter, requires the business manager of a correctional facility to deduct funds from inmate accounts to pay fees required by the PLRA. N.J.A.C. 10A:2–2.2(d) (1996).[22] The regulation explicitly refers to the PLRA and the comments to the 1996 amendments explain that the regulation was amended to ,comply with the PLRA. *See* 28 N.J.Reg. 4155(a), 5073(b).

Pursuant to the PLRA's directive that "the agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court," the New Jersey Department of Corrections has mandated that the business manager of a correctional facility deduct the installment fee payments authorized by the PLRA from in-

---

**20.** Compare 42 U.S.C. § 1997e(c) which provides in relevant part that the court "shall on its own motion or on the motion of a party *dismiss any action brought* with respect to prison conditions ... by a prisoner ... if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief" with 42 U.S.C. § 1997e(e) and 28 U.S.C. § 1915(g), which provides that "[i]n no event shall a prisoner *bring a civil action*" without prepayment of fees if he brought three prior actions that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. (emphasis added).

**21.** *Sample v. Diecks*, 885 F.2d 1099, 1109 (3d Cir.1989) ("Detention for a significant period beyond the term of one's sentence inflicts a harm.... Next to bodily security, freedom of choice and movement has the highest place in

the spectrum of values recognized by our Constitution.").

**22.** N.J.A.C. 10A:2–2.2(d) provides in relevant part:

Deductions of funds either earned or unearned from inmate accounts shall be made by the Business Manager as permitted by N.J.S .A. 30:4–91.4, 2C:43–1, 2C:46–1, 2C:46–4, 30:4–92, 30:7E–1, 30:4–16.2, 2C:44–6; and the Prison Litigation Reform Act of 1995, 18 U.S.C. § 3626, to pay:

1. Court ordered penalty assessments, restitution and fines;

2. Other revenue obligations or fees;

3. Fee for medical and/or dental treatment; and

4. Fees for prescription or nonprescription drugs or medicine.

mates' prison accounts.[23] It is clear that the PLRA and New Jersey regulations obligate institutional business managers, not prisoners, to initiate deductions from the account and forward the payments to the Clerk. Defendants' motion for summary judgment based on the plaintiff's alleged failure to send the Clerk installment payments will therefore be denied.[24] *See McGore v. Wrigglesworth*, 114 F.3d 601, 607–08 (6th Cir.1997) ("a case may not be dismissed [under the PLRA] when the payment of an assessment has been delayed by prison officials. A prisoner cannot be penalized when prison officials fail to promptly pay an assessment.").

### 8. Survivorship of Claim

The attorney for defendants asserts in Defendants' Brief that defendant Peggy MacClymont is deceased and that Friedland's claim does not survive her death. Defendants' Brief, unnumbered note, p. 5. No affidavit or legal authority has been offered to support this contention. Under 42 U.S.C. § 1988(a)[25], state statutory law governing the survival of state actions "provides the principal reference point in determining survival of civil rights actions, subject to the important proviso that state law may not be applied when it is 'inconsistent with the Constitution and laws of the United States.'" *Robertson v. Wegmann*, 436 U.S. 584, 589–90, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978). Under New Jersey law, an action for personal injury survives the death of the defendant. *See* N.J.S.A. 2A:15–4; *Ehrlich v. Merritt*, 96 F.2d 251, 253–54 (3d Cir.1938); *In re Gardinier's Estate*, 74 N.J.Super. 217, 224, 181 A.2d 35 (App.Div.1962), *reversed on other grounds*, 40 N.J. 261, 191 A.2d 294 (1963). N.J.S.A. 2A:15–4 provides:

> Where any testator or intestate shall, in his lifetime, have taken or carried away or converted to his use, the goods or chattels of any person, or shall, in his lifetime, have committed any trespass to the person or

**23.** Defendants in their brief quoted only the first sentence of 28 U.S.C. § 1915(b)(2) which provides that, after the payment of the initial partial filing fee, the prisoner "shall be required to make" monthly payments of 20% of the preceding month's income credited to his institutional account. Defendants' brief was silent concerning the second sentence, which requires the agency to forward payments to the Clerk from the inmate's account. Construing both sentences *in pari materia*, it appears as if the first sentence creates the prisoner's obligation for the payments and the second sentence effectuates the obligation by requiring the agency to deduct and forward the payments. *Cf., e.g., Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir.1997) (by filing motion to proceed *in forma pauperis* the prisoner consents to the deduction of the installments from his prison account by prison officials); *Walp v. Scott*, 115 F.3d 308 (5th Cir.1997) (vacating district court's order barring the filing of a complaint by a prisoner because he had not fully paid the filing fee in a previous action).

**24.** Attorney for defendants has submitted an affidavit in which she avers that plaintiff's inmate account statements show that he had more than $10.00 in his account during the months of August 1996, October 1996, and May 1997, yet he made no payments to the Clerk during those months. Affidavit of Jennifer L. Kleppe dated June 12, 1997, ¶ 11. The complaint was filed on July 29, 1996 upon payment of an initial partial filing fee of $7.51. From August 1996 through May 1997 (the last month included in the account statements attached to the affidavit of

counsel), the business manager was required to deduct from Friedland's account and send to the Clerk the sum of $53.60 in January 1997 (20% of December account income of $268.00). No other payments were required during those months, either because 20% of the previous month's income to the account equaled $0.00, or Friedland had less than $10.00 in the account that month. In addition, the docket indicates that Friedland made partial fee payments in March, November, and December, 1997, and January, 1998.

**25.** 42 U.S.C. § 1988(a) provides:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of titles 13, 24, and 70 of the Revised Statutes for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

property, real or personal, of any person, such person, his executors or administrators, shall have and may maintain the same action against the executors or administrators of such testator or intestate as he or they might have had or maintained against the testator or intestate, and shall have the like remedy and process for the damages recovered in such action as are now had and allowed in other actions against executors or administrators.

■ It is clear that Friedland's § 1983 claim against MacClymont survives her death. The motion for summary judgment based on the claim's not surviving her death will therefore be denied. The Court notes that it is incumbent on the attorney of defendants to comply with the requirement of Fed.R.Civ.P. 25(a)(1) by service of a statement of the fact of death.[26]

### C. Plaintiff's Motion for Summary Judgment .

■ As heretofore found with respect to defendants' motion for summary judgment, there are genuine issues of material fact which preclude the entry of summary judgment for both parties. Accordingly, plaintiff's motion for summary judgment will be denied.

### D. Plaintiff's Motion for Injunctive Relief

Plaintiff has filed a motion seeking a preliminary injunction and a temporary restraining order. The motion does not specify the specific relief that is requested. However, in his letter brief dated December 11, 1997 in support of the motion, Friedland asserts that

he was arrested and incarcerated on July 3, 1997 for alleged violations of parole, and no final parole revocation hearing has been conducted. Plaintiff's Letter Brief dated December 11, 1997, p. 3. He further asserts that he received written notice on December 11, 1997 that a final parole revocation hearing was scheduled for December 16, 1997 at Bayside State Prison, but the notice did not specify the nature of the alleged violations. *Id.*, p. 2. He asserts that, contrary to New Jersey regulations, the parole revocation hearing was not conducted within 60 days of arrest. *Id.*, pp. 3–4. Friedland asks this Court to enter an order directing defendants to terminate the parole revocation process and to restrain defendants from taking action without providing prior notice to this Court and an opportunity for Friedland to respond. *Id.*, p. 5.

Plaintiff's complaint in this case raises constitutional claims arising from his arrests in February and April, 1996 pursuant to parole violation warrants which have since been lifted. The complaint, which was signed by Friedland on May 13, 1996, does not include claims relating to any subsequent arrest and incarceration. The Court notes that Friedland has filed a motion, returnable on April 6, 1998 before the Magistrate Judge, to amend the complaint to include claims relating to his arrest in July, 1997.[27] Because plaintiff's motion for injunctive relief does not relate to issues or claims contained in plaintiff's original complaint, the application is premature and will be denied at this time without prejudice to Friedland's resubmission of the motion in the event that his motion to amend the complaint is granted.[28]

---

**26.** Fed.R.Civ.P. 25(a)(1) provides, in relevant part:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties.... Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

**27.** In his proposed amendment, Friedland asserts that he was arrested on a parole warrant on November 9, 1996. He asserts that the preliminary hearing, initially scheduled for November 25, 1996, was postponed twice because Howell

Dilkes failed to comply with the hearing examiner's order to provide discovery. Friedland further asserts that he received notice in December 1997 of a revocation hearing scheduled for December 16, 1997, but the circumstances of the alleged parole violations were not attached to the notice.

**28.** By letter to the Magistrate Judge from plaintiff dated March 1, 1998, plaintiff complains that, at the direction of the state Attorney General's Office, his parole eligibility date for a new criminal conviction has been intentionally miscalculated, funds were removed from his prison account, he was falsely charged with a disciplinary infraction of placing an altered court document in his

## III. CONCLUSION

For the foregoing reasons, this Court concludes that summary judgment will be granted in favor of defendants Fauver, Farrell, Matyus, Frasier, and Vitello. Because genuine issues of material fact exist regarding the liability of defendants DiSabato, Seligman, Dilkes, and MacClymont, their motions for summary judgment will be denied pursuant to Fed.R.Civ.P. 56, as will the motion for summary judgment filed by plaintiff.

The Court further concludes that plaintiff's motion for a temporary restraining order or preliminary injunction will be denied without prejudice.

classification file, and he was placed in detention. The letter asserts new facts and/or claims which are not before the Court, but could be raised in a new complaint or a motion to amend the complaint and a proposed amended complaint.